## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HOBART-MAYFIELD, INC. d/b/a
MAYFIELD ATHLETICS,

     Plaintiff,

v.

NATIONAL OPERATING COMMITTEE ON
STANDARDS FOR ATHLETIC EQUIPMENT,
KRANOS CORPORATION d/b/a SCHUTT
SPORTS, RIDDELL, INC., XENITH, LLC,
GREGG HARTLEY, in his capacity as Vice
President of the National Operating Committee
on Standards for Athletic Equipment, MICHAEL
OLIVER, in his Capacity as Executive
Director/Legal Counsel of the National
Operating Committee on Standards for Athletic
Equipment, VINCENT LONG, in his capacity as
Engineering Manager of Schutt Sports, and
KYLE LAMSON, in his capacity as Director of
New Product Innovation of Xenith, LLC,

     Defendants.

Case No. 19-CV-12712

Hon. Gershwin A. Drain
Mag. Elizabeth A. Stafford

---

### KRANOS CORPORATION D/B/A SCHUTT SPORTS, RIDDELL, INC., XENITH, LLC, VINCENT LONG, AND KYLE LAMSON'S MOTION TO DISMISS THE COMPLAINT

Defendants Kranos Corporation d/b/a Schutt Sports, Riddell, Inc., Xenith, LLC, Vincent Long, and Kyle Lamson ("Manufacturer Defendants") move pursuant to FED. R. CIV. P. 12(b) to dismiss Plaintiff's Complaint as to the Manufacturer Defendants. This motion is timely filed pursuant to the Stipulated Orders Extending Time to Respond to Plaintiff's Complaint entered by the Court. ECF Nos. 5, 7, and

10.  For the reasons set forth in the accompanying brief, Manufacturer Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Complaint as to the Manufacturer Defendants.

In accordance with E.D. Mich. LR 7.1(a), counsel for Kranos Corporation d/b/a Schutt Sports and Vincent Long contacted counsel for Plaintiff to ascertain whether this Motion will be opposed.   Plaintiff will oppose Manufacturer Defendants' Motion.

Dated:  December 2, 2019
**PERKINS COIE LLP**

*/s/ Rodger K. Carreyn*
    Rodger K. Carreyn
RCarreyn@perkinscoie.com
Christopher G. Hanewicz
CHanewicz@perkinscoie.com
Gabrielle E. Bina
GBina@perkinscoie.com
33 East Main Street, Suite 201
Madison, WI  53703
(608) 663-7460 (P); (608) 663-7499 (F)

**Warner Norcross & Judd LLP**
Michael G. Brady
MBrady@wnj.com
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
(248) 784-5000 (P)

*Attorneys for Defendant, Riddell, Inc.*

Respectfully submitted,
**Honigman LLP**

*/s/ David A. Ettinger*
    David A. Ettinger
DEttinger@honigman.com
660 Woodward Avenue
Suite 2290
Detroit, MI 48226-3506
(313) 465-7368 (P)

**Morganroth & Morganroth**
Jeffrey B. Morganroth
JMorganroth@morganrothlaw.com
344 North Old Woodward Avenue
Suite 200
Birmingham, MI 48009
(248) 864-4000 (P); (248) 864-4001 (F)

*Attorneys for Defendants Xenith, LLC and Kyle Lamson*

**KERR, RUSSELL AND WEBER, PLC**

/s/*Matthew L. Powell*
   Matthew L. Powell (P69186)
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226
(313) 961-0200 (P); (313) 961-0388 (F)
mpowell@kerr-russell.com

**Davis & White, LLC**
David A. White, Esq.
869 Turnpike Street, Suite 110
North Andover, MA 01845
(978) 688-1433 (P); (978) 688-3151 (F)
dwhite@daviswhite.com

*Attorneys for Defendants Kranos*
*Corporation d/b/a Schutt Sports and*
*Vincent Long*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

HOBART-MAYFIELD, INC. d/b/a
MAYFIELD ATHLETICS,

     Plaintiff,

v.

NATIONAL OPERATING COMMITTEE ON
STANDARDS FOR ATHLETIC EQUIPMENT,
KRANOS CORPORATION d/b/a SCHUTT
SPORTS, RIDDELL, INC., XENITH, LLC,
GREGG HARTLEY, in his capacity as Vice
President of the National Operating Committee
on Standards for Athletic Equipment, MICHAEL
OLIVER, in his Capacity as Executive
Director/Legal Counsel of the National
Operating Committee on Standards for Athletic
Equipment, VINCENT LONG, in his capacity as
Engineering Manager of Schutt Sports, and
KYLE LAMSON, in his capacity as Director of
New Product Innovation of Xenith, LLC,

     Defendants.

Case No. 19-CV-12712

Hon. Gershwin A. Drain
Mag. Elizabeth A. Stafford

---

## COMBINED BRIEF IN SUPPORT OF KRANOS CORPORATION D/B/A SCHUTT SPORTS, RIDDELL, INC., XENITH, LLC, VINCENT LONG, AND KYLE LAMSON'S MOTION TO DISMISS THE COMPLAINT

---

# **TABLE OF CONTENTS**

ISSUES PRESENTED ................................................................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iv

INTRODUCTION ...................................................................................... 1

STATEMENT OF FACTS .......................................................................... 3

LEGAL STANDARD ................................................................................. 4

ARGUMENT ........................................................................................... 5

I.      THE COMPLAINT FAILS TO STATE A CLAIM UNDER
        SECTION 1 OF THE SHERMAN ACT ............................................. 5

        A.      The Complaint Fails to Set Forth Factual Allegations Plausibly
                Suggesting any Antitrust Conspiracy or Unlawful Agreement ............ 5

        B.      The Complaint Does Not Plausibly Allege a Conspiracy in
                Counts I and II .................................................................... 6

        C.      The Complaint's Allegations Do Not Support a "Boycott"
                Claim ................................................................................ 8

        D.      Hobart-Mayfield Fails to Allege Either a *Per Se* or Rule of
                Reason Violation ................................................................ 12

        E.      Hobart-Mayfield Lacks Antitrust Standing Because It Fails to
                Allege Facts that Show It Suffered Antitrust Injury .................... 14

II.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER
        SECTION 2 OF THE SHERMAN ACT ........................................... 15

III.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER
        MICHIGAN ANTITRUST LAW .................................................... 17

IV.     THE COMPLAINT FAILS TO STATE A CLAIM FOR
        TORTIOUS INTERFERENCE ...................................................... 18

V.      THE COMPLAINT FAILS TO STATE A CLAIM FOR ATTEMPTED
        MONOPOLIZATION AGAINST SCHUTT SPORTS ............................ 22

CONCLUSION ....................................................................................... 24

## **ISSUES PRESENTED**

1.      Whether the Complaint pleads sufficient facts to support a claim under Sections 1 and 2 of the Sherman Antitrust Act and Sections 2 and 3 of the Michigan Antitrust Reform Act, where essential elements of the claims are omitted?

2.      Whether the Complaint pleads sufficient facts to support a claim for tortious interference with a business relationship or expectancy, where essential elements of the claims are omitted?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

## Cases

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366 (6th Cir. 2003)

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Bender v. Southland Corp.*, 749 F.2d 1205 (6th Cir. 1984)

*Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008 (6th Cir. 2005)

*FTC v. Indiana Fed'n of Dentists*, 475 U.S. 447 (1986)

*FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990)

*Howard Hess Dental Labs Inc. v. Dentsply Int'l., Inc.*, 602 F.3d 237 (3d Cir. 2010)

*Innovation Ventures, LLC v. Custom Nutrition Labs.*, LLC, 912 F.3d 316 (6th Cir. 2018)

*Monsanto Co. v. Spray Rite Service Corp.*, 465 U.S. 752 (1984)

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 926 F. Supp. 2d 36 (D.D.C. 2013)

*Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568 (6th Cir. 1986)

*Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091 (N.D. Cal. 2010)

*RxUSA Wholesale, Inc. v. Alcon Labs.*, 391 F. App'x 59 (2d Cir. 2010)

*Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436 (6th Cir. 2014)

*Spectrum Sports v. McQuillan*, 506 U.S. 447 (1993)

*Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518 (5th Cir. 1999)

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)

*Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich. App. 361; 354 N.W.2d 341 (Mich. Ct. App. 1984)

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004)

## **Statutes**

15 U.S.C. §§ 1, 2

Mich. Comp. Laws Ann. § 445.772

## **Rules**

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 9

## **INTRODUCTION**

In its Complaint, Plaintiff Hobart-Mayfield, Inc. d/b/a Mayfield Athletics ("Hobart-Mayfield") alleges a conspiracy involving Defendants Kranos Corporation d/b/a Schutt Sports ("Schutt"), Riddell, Inc. ("Riddell"), Xenith, LLC ("Xenith), all manufacturers of football helmets (the "Manufacturer Defendants"), and the National Operating Committee on Standards for Athletic Equipment ("NOCSAE"), to interfere with Hobart-Mayfield's sale of facemask clips ("S.A.F.E.Clips") for football helmets. But Hobart-Mayfield falls far short of the Supreme Court's requirement in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) that it allege facts that *plausibly* support its antitrust conspiracy claims:

1. Hobart-Mayfield fails to allege any facts that would directly support its conspiracy claims. It does not allege *any* communications between any of the Manufacturer Defendants and NOCSAE related to the issues in the Complaint. The only communication it alleges between and among the Manufacturer Defendants concerns the results of Xenith's and Schutt's testing of the S.A.F.E.Clip and determining that it raised safety concerns—which is evidence that there was no anticompetitive conspiracy at all.

2. Hobart-Mayfield also fails to allege facts that would plausibly set forth circumstantial evidence of a conspiracy. It does not even allege parallel

conduct by the Manufacturer Defendants, a factor which is the most basic starting point for any conspiracy claim based on circumstantial evidence.  And it fails to allege any other facts that would plausibly suggest why the Manufacturer Defendants would have a motive to interfere with sales of the S.A.F.E.Clip, especially since that product does not compete with their football helmets.

Indeed, given the concerns raised by the Manufacturer Defendants regarding the S.A.F.E.Clip's potential safety problems (as alleged in the Complaint), the Complaint itself supports the conclusion that the Manufacturer Defendants have each exercised prudent judgment and acted in their own self-interests.  This is not evidence of collusion—it is evidence of the free-market economy at work.

Additionally, the Complaint fails to allege either facts supporting a *per se* antitrust violation or harm to overall competition, not merely to the Plaintiff.  As a result, Hobart-Mayfield has failed to allege either the substantive requirements for a conspiracy to violate the antitrust laws, or the "antitrust injury" required to support standing.

The Complaint's other claims are equally deficient.  Hobart-Mayfield's claim of conspiracy to monopolize fails for the added reason that the law requires that the conspirators agreed to vest monopoly power in a single entity, an allegation lacking here.  Hobart-Mayfield also fails to allege a dangerous probability of success in

gaining a monopoly, an essential element of its claim of attempted monopolization. Because the Michigan antitrust laws are interpreted in alignment with the Sherman Act, the Complaint's state antitrust claims fail as well. Finally, the tortious interference claims fail because Hobart-Mayfield has not properly alleged unlawful conduct, malicious intent or interference with a valid expectancy. Each of these claims should likewise be dismissed.[1]

## STATEMENT OF FACTS

NOCSAE is a nonprofit body that "develops voluntary performance and test standards for athletic equipment that are available for adoption by any athletic regulatory body." Complaint ¶¶ 8, 39. Most football regulatory bodies in the United States require that participants use helmets and facemasks that meet the NOCSAE standards. *Id.* ¶ 42. NOCSAE has entered into license agreements with various equipment manufacturers, including among others the Manufacturer Defendants, under which manufacturers pay NOCSAE a fee for use of its trademarked logos and phrases. *Id.* ¶ 48.

Hobart-Mayfield alleges that it has attempted to market, distribute, and sell the "S.A.F.E.Clip," an aftermarket, add-on facemask clip for helmets. *Id.* ¶ 1. In

---

[1] Since Mr. Long and Mr. Lamson are alleged to have violated the law only in their capacity as employees of Schutt and Xenith, the claims against them should be dismissed as well. See *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994); *Dzierwa v. Michigan Oil Co.*, 152 Mich. App. 281; 393 N.W.2d 610, 613 (1986).

2018, NOCSAE issued a press release indicating that the addition of items to a previously certified helmet results in a new untested model; when that happens, the helmet manufacturer has the right to declare its NOCSAE certification void, to allow the certification to remain unaffected, or to engage in additional certification testing of the new model with the add-on product. *Id*. ¶ 64. Hobart-Mayfield asserts that NOCSAE and the Manufacturer Defendants have conspired to exclude aftermarket or add-on products such as the S.A.F.E.Clip. *Id*. ¶¶ 2-4.

Hobart-Mayfield alleges that each of the Manufacturer Defendants has taken the position that installing the S.A.F.E.Clip on a football helmet would void the helmet warranty. Critically, the Complaint acknowledges that safety concerns were communicated to Hobart-Mayfield by the Manufacturer Defendants. *Id*. ¶¶ 104, 107.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). A "claim is facially plausible when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the complaint's allegations are accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* In the antitrust context, the Supreme Court has warned, "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Twombly*, 550 U.S. at 558 (quotation omitted).

## ARGUMENT

## I.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States."  15 U.S.C. § 1.  The Supreme Court has interpreted this statute "to outlaw only *unreasonable* restraints."  *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2283 (2018) (citation omitted).  The Complaint here fails to allege facts supporting a claim under the Sherman Act.

### A.    The Complaint Fails to Set Forth Factual Allegations Plausibly Suggesting any Antitrust Conspiracy or Unlawful Agreement

"Because § 1 of the Sherman Act does not prohibit all unreasonable restraints of trade...but only restraints effected by a contract, combination, or conspiracy…the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553 (citation omitted; emphasis added).  Thus, "[a] plaintiff must allege enough factual matter ... to suggest that an agreement was made, and an allegation of parallel

conduct and a bare assertion of conspiracy will not suffice." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

In the absence of direct evidence of agreement, the Supreme Court has explained that "[a] statement of parallel conduct . . . needs some setting suggesting the agreement necessary to make out a Section 1 claim; without further circumstance pointing toward a meeting of the minds, an account . . . stays in neutral territory." *Twombly*, 550 U.S. at 557.

Thus, it was incumbent upon Hobart-Mayfield to allege facts that were more than merely neutral as between the allegations of conspiracy and individual (even if parallel) conduct.  It has failed to do so.

## B. <u>The Complaint Does Not Plausibly Allege a Conspiracy in Counts I and II</u>

Count I of the Complaint alleges two "categor[ies] of contracts, combinations, and/or conspiracies" purportedly giving rise to its antitrust claim: (1) "NOCSAE's licensing agreements with Riddell, Schutt, and Xenith"; and (2) the helmet manufacturers' "involvement in, and influence over, NOCSAE's leadership and operation."  Complaint ¶¶ 125, 132.  Count II does not identify any "categories" of agreements, instead vaguely alleging that NOCSAE has "allowed" the helmet manufacturers to control the standards and certification process.  *Id.* ¶ 161.

There are no facts in the Complaint that would plausibly support these claims. In fact, the Complaint does not allege any facts whatsoever linking the Manufacturer

Defendants to NOCSAE's actions.  The Complaint does not allege that any of the Manufacturer Defendants even advocated for the NOCSAE position about which Hobart-Mayfield complains.  There are no allegations that the Manufacturer Defendants control NOCSAE or even currently serve on NOCSAE's board.  Nor does the Complaint allege that the NOCSAE royalty payment system was established by the Manufacturer Defendants, influenced in any way by the Manufacturer Defendants, or had any specific impact on any decision by NOCSAE that affected Hobart-Mayfield.[2]

Hobart-Mayfield does allege that Manufacturer Defendants somehow have "influence over" NOCSAE's decisions.  *See* Complaint ¶ 50.  But there are no specific factual allegations to support this conclusory statement.  And, in any event, influence or advocacy are simply not sufficient to support an antitrust conspiracy claim.  *See Monsanto Co. v. Spray Rite Service Corp.*, 465 U.S. 752 (1984) (a competitor's complaint regarding the plaintiff's conduct, followed by action by the entity complained to, is not sufficient to support a claim of antitrust conspiracy; "something more than evidence of complaints is needed").  Here, of course, there are not even any allegations about complaints to NOCSAE concerning Hobart-Mayfield.  The Complaint falls far short of the threshold for viability.

---

[2] Indeed, the royalty system is not alleged to be specific to football helmets.

For all these reasons, the allegations of Count I and Count II regarding NOCSAE's actions fail to state a claim.[3]

## C.     The Complaint's Allegations Do Not Support a "Boycott" Claim

Count III claims that the Manufacturer Defendants conspired to "boycott" and "deter" sales of the S.A.F.E.Clip.  Those allegations are equally insufficient. Noticeably absent is any alleged direct evidence of an agreement between any of the defendants, much less who was involved in those discussions, when and where such discussions took place, or the substance of any such "agreement."

As explained in *Twombly, supra*, the starting point for a complaint that does not allege direct evidence of agreement is parallel conduct by the defendants, though that itself is insufficient to state a claim.  *Twombly*, 550 U.S. at 556 ("when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding *agreement*, not merely parallel conduct that could just as well be independent action") (emphasis added).

Here, Hobart-Mayfield does not even allege parallel conduct that could suggest an anticompetitive agreement.  While each Defendant is alleged to have done *something* that may have had the effect of harming Hobart-Mayfield, the

---

[3] To the extent that Hobart-Mayfield alleges that NOCSAE's actions were "arbitrary" or somehow violated due process, and that those actions constituted an antitrust violation, such allegations cannot implicate the Manufacturer Defendants unless they were undertaken pursuant to a conspiracy.  Therefore, those allegations are not further addressed here.

conduct alleged is neither parallel nor even, in many cases, related to Hobart-Mayfield.  The Complaint makes much of the fact that each Manufacturer Defendant has a policy of voiding its helmet warranty if unauthorized add-on products are used with the helmet.  But Hobart-Mayfield never alleges that these policies were directed toward Plaintiff in any way, adopted to exclude the S.A.F.E.Clip, or even that any of the policies were adopted only after Hobart-Mayfield began to offer its product.

The other actions alleged are not parallel at all.  Riddell is alleged to have communicated to two customers its concerns about the S.A.F.E.Clip.  Complaint ¶¶ 98-99.  But no such allegations are made as to Schutt or Xenith, and, in any event, such communications, if true, would be evidence of Riddell advancing legitimate business interests independently, which would have been unnecessary if the conspiracy alleged by Plaintiff had existed.

Xenith and Schutt are alleged to have made negative statements directly to Hobart-Mayfield.  But the same allegations are not made as to Riddell.  And, in fact, those allegations establish the opposite of what Hobart-Mayfield claims.  They show that Xenith and Schutt, who had each tested the S.A.F.E.Clip because they were considering offering the product, were concerned that it could cause harm to users.

For example, Schutt explained to Hobart-Mayfield that "[a]s you mentioned in your email below, your original clip did result in facial contact of the guard to the chin which as you know is considered a failure."  The Complaint alleges even

stronger statements by Xenith, noting that "in all the cases we have tested, the face mask made contact with the face when tested . . . we have pointed out to you multiple deviations" in Hobart-Mayfield's testing procedure.   Xenith's representative continued that "I find it *negligent* that you would put a product on the market that modifies an existing safety product without understanding the base level testing or consequences of the product you are selling . . . these clips should not be in use on the field until you have completed your due diligence . . ." *Id.* ¶ 107 (emphasis added).

Again, this conduct is neither parallel (since Riddell is not alleged to have engaged in it) nor anticompetitive.  Instead, it shows just the opposite, that Schutt and Xenith had legitimate motives to unilaterally decide not to use the S.A.F.E.Clip because it could cause injury.[4]

Of course, there are rational business reasons for a company to limit its liability or to void its warranty or third-party certification where a user has materially altered its product in a manner that may affect the product's performance or safety; this is particularly true in a market where companies regularly face product-liability claims.   In fact, the Complaint alleges that "[f]ootball helmet manufacturers

---

[4] While the safety concerns with the S.A.F.E.Clip are apparent even from the face of the Complaint, "[a] manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto*, 465 U.S. at 761.

routinely invoke or rely on their compliance with NOCSAE standards in defending against lawsuits brought by injured players." Complaint ¶ 44. Manufacturers, therefore, logically want to limit exposure where a user adds an aftermarket product to a helmet, resulting in a helmet that has not been tested under the NOCSAE standards. Far from suggesting conspiracy, the allegations confirm that the defendants were individually acting in line with their legitimate business interests.

Given these facts, and the (critical) distinction between this case and other group boycott cases—that the conduct is not targeted at a competitor—it is impossible to ascertain any motive to conspire. Hobart-Mayfield's conclusory theory asserting such a motive is deficient. Hobart-Mayfield asserts that "[i]f one manufacturer adopts the S.A.F.E.Clip for use on some or all of its helmets, or otherwise offers it as an add-on product with its helmets, non-adopting manufacturers could face product-liability exposure for their failure to utilize or offer the S.A.F.E.Clip given its proven ability to substantially reduce impact forces to the head each time a football player is hit." Complaint ¶ 110. Of course, given that (as alleged in the Complaint) Schutt was already developing its own facemask clip, other manufacturers would have had no motive to exclude the S.A.F.E.Clip, which would only benefit Schutt.[5]

---

[5] The Complaint does not allege that Riddell was involved in any testing or discussed the S.A.F.E.Clip with any of the other defendants at any time. Regardless, Riddell (like the other manufacturers) had legitimate business reasons to limit its warranty

In fact, the Complaint's allegations that Schutt was developing its own facemask clip directly contradict any claim of conspiratorial motive. If that were true, then Schutt would have an individual incentive not to utilize the Hobart-Mayfield product (since it was developing its own), regardless of what Riddell and Xenith did. Its conduct, therefore, is fully explainable without the need to posit a conspiracy.

Hobart-Mayfield's theory of conspiracy at ¶ 110 is also insufficient. While it essentially attempts to allege a "common failure meaningfully to pursue attractive business opportunities," this was held to be insufficient to state a claim in *Twombly*. *Twombly*, 550 U.S. at 551 (internal quotations omitted). Here, the allegations are doubly insufficient, since they explain that both Schutt and Xenith concluded that there were not attractive business opportunities due to the testing problems they found with the S.A.F.E.Clip.

### D.   Hobart-Mayfield Fails to Allege Either a *Per Se* or Rule of Reason Violation

As a separate and independent matter, the Complaint fails to allege a *per se* violation of the antitrust laws, or a violation under the "rule of reason." Thus, even if the Complaint had adequately alleged a conspiracy, its allegations under Counts I-III would not state a claim for an antitrust violation.

---

obligations and legal liabilities in the event that a user modified its helmets with add-on products that voided the NOCSAE certification.

The *per se* doctrine applies "only if a restraint clearly and unquestionably falls within one of the handful of categories that have been collectively deemed per se anticompetitive." *Innovation Ventures, LLC v. Custom Nutrition Labs.*, LLC, 912 F.3d 316, 340 (6th Cir. 2018). "The classic examples are naked, horizontal restraints pertaining to prices or territories," which are not alleged here.  *Id.* at 341.

Nor do Hobart-Mayfield's claims of "group boycott" allege a *per se* claim. The Supreme Court has made clear that "the *per se* approach has generally been limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor . . . ." *FTC v. Indiana Fed'n of Dentists*, 475 U.S. 447, 458 (1986).  The *per se* label has also been applied to boycotts that reinforce price fixing agreements.  *FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990).  But the allegations in Hobart-Mayfield's Complaint do not fit either of these fact patterns.

Hobart-Mayfield has also failed to allege violation under the "rule of reason," as is required for any action that is not a *per se* violation.  *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1012 (6th Cir. 2005).  That is because a rule of reason violation must involve harm to competition, not merely to the plaintiff. The antitrust laws were enacted for "the protection of competition, not competitors," *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962).  "The foundation of an antitrust claim is the alleged adverse effect *on the market*." *Care Heating,* 427 F.3d

at 1014.  "[T]he Sherman Act was intended to protect competition in the market as a whole, not individual competitors."  *Id.*

While Hobart-Mayfield broadly defines the market as the "national market for football safety equipment and accessories" (Complaint ¶ 3), it fails to allege that defendants' conduct affected competition in this broad market.  Indeed, while Hobart-Mayfield notes that "Riddell, Schutt Sports, and Xenith together enjoy more than 90% of the national football helmet market" (Complaint ¶ 19), it includes no facts regarding the defendants' share of the (far broader) market for "football safety equipment and accessories," which would include manufacturers of numerous other products (e.g., protective pads, mouth guards, nose guards, eye protection, gloves, footwear, protective cups, neck rolls, etc.).  This provides a separate and independent reason for dismissal.

### E.   Hobart-Mayfield Lacks Antitrust Standing Because It Fails to Allege Facts that Show It Suffered Antitrust Injury

Separately, and independently, each of the antitrust claims should be dismissed because the Complaint lacks factual allegations to demonstrate that Hobart-Mayfield has antitrust standing.  To assert a private right of action, an antitrust plaintiff must allege facts to show "antitrust injury," that is, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful."  *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).  For this reason, "a complaint alleging only adverse effects

- 14 -

suffered by an individual competitor cannot establish an antitrust injury." *Care Heating*, 427 F.3d at 1014-1015. Therefore, Hobart-Mayfield fails to satisfy this requirement as well. *See also CBC Cos., Inc. v. Equifax, Inc.*, 561 F.3d 569, 572 (6th Cir. 2009) ("[T]o approve antitrust injury, the key inquiry is whether *competition* – not necessarily a competitor – suffered as a result of the challenged business practice.").

## II.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 2 OF THE SHERMAN ACT

Count IV of the Complaint alleges "a combination or conspiracy between Defendants Riddell, Schutt Sports, and/or Xenith to monopolize" under Section 2 of the Sherman Act. Complaint ¶ 188. Section 2 makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2.

As discussed above, however, the Complaint does not allege that the helmet manufacturers reached any *agreement*. "Because § 2 conspiracy-to-monopolize claims require proof of concerted activity, just as § 1 conspiracy claims do, [t]he claim of a conspiracy to monopolize fails for the same reason as did the appellants' section 1 claims." *Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568, 574 (6th Cir. 1986) (citation omitted).

- 15 -

Moreover, a Section 2 conspiracy to monopolize claim also requires a plaintiff to plead a specific intent to monopolize.  Specific intent to monopolize means an intent to "achieve an illegal monopoly." *Howard Hess Dental Labs Inc. v. Dentsply Int'l., Inc.*, 602 F.3d 237, 257 (3d Cir. 2010).  Although specific intent may be inferred from unlawful conduct, a plaintiff must allege facts supporting the inference. *See id*. at 257-58.  No facts have been alleged to meet this requirement. Indeed, Hobart-Mayfield fails to explain how the Manufacturer Defendants could intend a monopoly over a market that is far broader than football helmets, and includes all other safety products.  Complaint ¶ 3.

To meet this requirement, Hobart-Mayfield must also allege that defendants sought to confer monopoly power on *a single firm*.  Courts have rejected a "shared monopoly" or "joint monopolization" theory, under which a group of firms that, together, allegedly possess monopoly power can be found liable for monopolization. *See, e.g., RxUSA Wholesale, Inc. v. Alcon Labs.*, 391 F. App'x 59, 61 (2d Cir. 2010) (affirming dismissal of Section 2 claims); *Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1127 (N.D. Cal. 2010) (dismissing Section 2 claims alleging that two companies shared monopoly because "Section 2…does not punish behavior aimed at creating or maintaining oligopolies"); *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co*., 926 F. Supp. 2d 36, 45-46 (D.D.C. 2013) (dismissing Section 2 claims and agreeing with "vast majority of other courts" in concluding that a

- 16

"shared monopoly" cannot support a Section 2 claim).  Here, Hobart-Mayfield not only failed to allege facts sufficient to show that defendants conspired at all, but also failed to allege that defendants agreed to vest monopoly power in a single defendant.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER MICHIGAN ANTITRUST LAW

Along with its Sherman Act claims, Hobart-Mayfield invokes the equivalent sections of the Michigan Antitrust Reform Act ("MARA").  *See* Complaint, Counts I-IV (citing MCL § 445.772).[6]  Section 2 of MARA provides, "[a] contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in relevant market is unlawful."  MICH. COMP. LAWS ANN. § 445.772.  The federal cases, and the principles they enunciate, also are dispositive as to Hobart-Mayfield's state antitrust claims.  *See* MICH. COMP. LAWS ANN. § 445.784(2) (1985) ("It is the intent of the legislature that in construing all sections of [MARA], the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes ....").  "Because [MARA] and the Sherman Anti-Trust Act mirror each other, [the court] appl[ies] the same analysis to both the federal and state anti-trust claims." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 368 n.1 (6th Cir. 2003).  Thus, for the same reasons discussed above with respect to the

---

[6] Count V additionally invokes Section 3 of MARA (MICH. COMP. LAWS ANN. § 445.773), along with Section 2 of the Sherman Act, against Schutt Sports only.

Sherman Act, Hobart-Mayfield has failed to state a viable claim for relief under the Michigan antitrust laws.

## IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

In addition to the antitrust claims, Hobart-Mayfield asserts a bare-bones claim of "tortious interference with a business relationship or expectancy" against each of the Manufacturer Defendants (Counts VI, VII, VIII).  To prevail on a tortious interference with a business relationship or expectancy claim under Michigan law, a plaintiff must allege: "(i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage."  *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (citation omitted).  The Complaint fails to meet these requirements.

Hobart-Mayfield does not allege facts establishing any intentional interference by any of the defendants with Hobart-Mayfield's business relationships. "Intentional interference requires more than just purposeful or knowing behavior on the part of the defendant. [A] plaintiff must also allege that the interference was either (1) a per se wrongful act or (2) a lawful act done with malice and unjustified in law for the purpose of invading the ... business relationship of another."  *Id.* at 441 (citation omitted). "To establish that a lawful act was done with malice and without

- 18 -

justification, [a] plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Id.* at 442. "[I]nterference for the purpose of competition is not enough." *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich. App. 361, 377; 354 N.W.2d 341, 347 (Mich. Ct. App. 1984).

A review of the specific allegations here fails to establish any basis for believing that the alleged conduct was either intentional or malicious. First, since Hobart-Mayfield has not alleged any specific actions by any of the Manufacturer Defendants to cause NOCSAE to issue its statements, there is no basis for claiming that the Manufacturer Defendants intentionally interfered with Hobart-Mayfield with regard to the NOCSAE certification. Second, since Hobart-Mayfield fails to allege that the Manufacturer Defendants' warranty provisions were adopted after—or were in any way related to—Hobart-Mayfield's offering of the S.A.F.E.Clip, there is no basis for concluding that the warranty claims constituted actions intended to interfere with Hobart-Mayfield or were motivated by malice toward Hobart-Mayfield. Finally, the allegations of statements to Hobart-Mayfield by Schutt and Xenith could not possibly be viewed as interfering with any customer expectancy,

since they were only directed to Hobart-Mayfield itself, not to any potential customers.[7]

Moreover, the tortious interference allegations fail to establish the proper interference with a *reasonable expectancy*.  "The expectancy must be a reasonable likelihood or probability, not mere wishful thinking."  *Trepel*, 354 N.W.2d at 348.  Here, Hobart-Mayfield identifies several potential customers who explain why they would not utilize the S.A.F.E.Clip, but identifies only one statement to the effect that the customer wanted to sell the S.A.F.E.Clip, and therefore arguably alleged a reasonable expectancy.  *See* Complaint ¶ 96 ("Bob Fawley . . . would 'love' to sell the S.A.F.E.Clip.").  But Mr. Fawley's statement (like some of the others) said that he wouldn't sell the S.A.F.E.Clip "unless and until they are approved by the helmet manufacturers . . . ."  Thus, Mr. Fawley's decision was not made based on intentional interference by a manufacturer.  Rather, he simply said he wouldn't act unless a manufacturer affirmatively supported the S.A.F.E.Clip product.  The absence of such affirmative support—which no manufacturer is required to provide—is certainly not evidence of intentional, malicious interference.   Mr. Fawley's

---

[7] Statements made by a manufacturer simply communicating a pre-existing warranty policy, *see* Complaint ¶¶ 98-99, cannot constitute malicious interference, since any manufacturer could be expected to inform customers about its existing policies.

- 20

statement, therefore, fails to provide any basis for a proper tortious interference claim.

Finally, in the absence of facts indicating a motive to conspire or providing a reason why the Manufacturer Defendants would wish to interfere with Hobart-Mayfield, no facts presented here could possibly represent malicious intent. The tortious interference claims fail as well.

Hobart-Mayfield's claim of illegal conduct through the Manufacturer Defendants' statements about their warranties (i.e., that "a manufacturer cannot limit its warranty based on the use of an aftermarket or add-on product pursuant to the Magnuson-Moss Act") is also legally incorrect. *See* Complaint ¶ 89. The Magnuson-Moss Act only prohibits a manufacturer from conditioning validity of the warranty on use of the manufacturer's replacement parts; it does not speak to add-on products such as the S.A.F.E.Clip. *See* 15 U.S.C. § 2302(c).

Nor can Hobart-Mayfield's conclusory allegations of "propagat[ion]" of an "errant belief" suffice to meet this requirement, Complaint ¶ 113, since fraud must be alleged with particularity. FED. R. CIV. P. 9(b). "It is a serious matter to charge a person with fraud and hence, no one is permitted to do so unless he is in a position and is willing to put himself on the record as to what the alleged fraud consists of specifically." *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972). Consequently, Fed. R. Civ. P. 9(b) makes an exception to the notice pleading standard for fraud

claims. It requires that "in allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." Pleading fraud with particularity requires "a plaintiff, at a minimum, to allege a time, place, and content of misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). None of this information is provided.

Finally, it is well-settled that "[w]here the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Saab Auto. AB*, 770 F.3d at 442. As discussed above, the Complaint confirms that there were legitimate concerns raised about the safety of the Hobart-Mayfield product. Complaint ¶¶ 104, 107.

## V.   THE COMPLAINT FAILS TO STATE A CLAIM FOR ATTEMPTED MONOPOLIZATION AGAINST SCHUTT SPORTS

To bring an attempted monopolization claim, a plaintiff must show that the defendant: (1) engaged in predatory or anticompetitive conduct; (2) acted with a specific intent to monopolize; and (3) has a dangerous probability of success in achieving monopoly power. *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993). Hobart-Mayfield's Complaint either establishes that these factors are not met or does not set forth any factual allegation that could plausibly suggest Schutt attempted to monopolize any market.

First, "a finding of exclusionary conduct requires some sign that the monopolist engaged in behavior that—examined without reference to its effects on

competitors—is economically irrational." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 523 (5th Cir. 1999); *see also*, *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985).  "Acts which are ordinary business practices typical of those used in a competitive market do not constitute anti-competitive conduct violative of Section 2." *Trace X Chem., Inc. v. Canadian Indus., Ltd.*, 738 F.2d 261, 266 (8th Cir. 1984).  Moreover, a claimed monopolist does not have an obligation to deal with or aid competitors, such as agreeing to warrant their products. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004).  Per the Complaint, Schutt acted in an economically rational manner: (1) to limit its warranty obligations and legal liabilities if a user modified its helmets with add-on products that voided the NOCSAE certification; and (2) attempted to increase competition in the market by increasing consumer choice.  Complaint ¶¶ 44, 199.

Second, specific intent is more than the intent to defeat rivals: it is specific intent to monopolize.  *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 927 (4th Cir. 1990).  There are no allegations that would plausibly support the inference that Schutt intended to monopolize any market, let alone the market for functionally equivalent faceclips.

Third, a "plaintiff charging attempted monopolization must prove a dangerous probability of actual monopolization, which has generally required a definition of

the relevant market and examination of market power." *Spectrum Sports*, 506 U.S.
at 455. An attempted monopolization claim against a defendant with a market share
of less than 30% should presumptively be rejected, and rejected if the market share
is between 30% and 50% "except when conduct is very likely to achieve monopoly
or when conduct is invidious . . . . ." *M&M Med. Supplies & Serv., Inc. v. Pleasant
Valley Hosp., Inc.*, 981 F.2d 160, 168 (4th Cir. 1992). When evaluating market
power, a showing of significant barriers to entry is typically necessary. *Am. Prof'l
Testing Serv.*, *v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d
1147, 1153-55 (9th Cir. 1997). The Complaint fails to allege an adequate definition
of the relevant market and is utterly devoid of any examination of Schutt's market
power, rendering it fatally deficient under both federal and Michigan law.[8] Indeed,
because the Complaint does not even allege that Schutt actually sells a competing
faceclip, Schutt has zero market share cannot plausibly have a dangerous probability
of actual monopolization of a product it does not sell.

## CONCLUSION

As the Complaint fails to state a claim for relief, Manufacturer Defendants
respectfully request that the Court grant their motion for dismissal.

---

[8] Although Hobart-Mayfield notes that "Riddell, Schutt Sports, and Xenith together
enjoy more than 90% of the national football helmet market" (Complaint ¶ 19), it
includes no facts regarding Schutt's individual share of the market for functionally
equivalent faceclips.

Dated: December 2, 2019
**PERKINS COIE LLP**

*/s/ Rodger K. Carreyn*
  Rodger K. Carreyn
RCarreyn@perkinscoie.com
Christopher G. Hanewicz
CHanewicz@perkinscoie.com
Gabrielle E. Bina
GBina@perkinscoie.com
33 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7460 (P); (608) 663-7499 (F)

**Warner Norcross & Judd LLP**
Michael G. Brady
MBrady@wnj.com
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
(248) 784-5000 (P)

*Attorneys for Defendant, Riddell, Inc.*

**Kerr, Russell and Weber PLC**

*/s/Matthew L. Powell*
Matthew L. Powell (P69186)
mpowell@kerr-russell.com
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
(313) 961-0200 (P); (313) 961-0388 (F)

*Attorneys for Defendants Kranos*
*Corporation d/b/a Schutt Sports and*
*Vincent Long*

Respectfully submitted,
**Honigman LLP**

*/s/ David A. Ettinger*
  David A. Ettinger
DEttinger@honigman.com
660 Woodward Avenue
Suite 2290
Detroit, MI 48226-3506
(313) 465-7368 (P)

**Morganroth & Morganroth**
Jeffrey B. Morganroth
JMorganroth@morganrothlaw.com
344 North Old Woodward Avenue
Suite 200
Birmingham, MI 48009
(248) 864-4000 (P); (248) 864-4001 (F)

*Attorneys for Defendants Xenith, LLC and*
*Kyle Lamson*

**Davis & White, LLC**
David A. White, Esq.
869 Turnpike Street, Suite 110
North Andover, MA 01845
(978) 688-1433 (P); (978) 688-3151 (F)
dwhite@daviswhite.com

*Attorneys for Defendants Kranos*
*Corporation d/b/a Schutt Sports and*
*Vincent Long*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**

By: /s/ *Matthew L. Powell*
      Matthew L. Powell (P69186)
500 Woodward Avenue, Suite 2500
Detroit, MI  48226
(313) 961-0200
mpowell@kerr-russell.com